## Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------------X

| | | |
|---|---|---|
| FRANKLIN CALIFORNIA TAX-FREE TRUST (for the FRANKLIN CALIFORNIA INTERMEDIATE-TERM TAX FREE INCOME FUND) | : | CASE NO. 14-1518 (FAB) |
| -and- | : | |
| FRANKLIN TAX-FREE TRUST (for the series FRANKLIN FEDERAL INTERMEDIATE-TERM TAX-FREE INCOME FUND, FRANKLIN DOUBLE TAX-FREE INCOME FUND, FRANKLIN COLORADO TAX-FREE INCOME FUND, FRANKLIN GEORGIA TAX-FREE INCOME FUND, FRANKLIN PENNSYLVANIA TAX-FREE INCOME FUND, FRANKLIN HIGH YIELD TAX-FREE INCOME FUND, FRANKLIN MISSOURI TAX-FREE INCOME FUND, FRANKLIN OREGON TAX-FREE INCOME FUND, FRANKLIN VIRGINIA TAX-FREE INCOME FUND, FRANKLIN FLORIDA TAX-FREE INCOME FUND, FRANKLIN LOUISIANA TAX-FREE INCOME FUND, FRANKLIN MARYLAND TAX-FREE INCOME FUND, FRANKLIN NORTH CAROLINA TAX-FREE INCOME FUND, and FRANKLIN NEW JERSEY TAX-FREE INCOME FUND) | : | DECLARATORY JUDGMENT |
| -and- | : | |
| FRANKLIN MUNICIPAL SECURITIES TRUST (for the series FRANKLIN CALIFORNIA HIGH YIELD MUNICIPAL BOND FUND and FRANKLIN TENNESSEE MUNICIPAL BOND FUND) | : | |
| -and- | : | |
| FRANKLIN CALIFORNIA TAX-FREE INCOME FUND | : | |
| -and- | : | |
| FRANKLIN NEW YORK TAX-FREE INCOME FUND | : | |
| -and- | : | |

FRANKLIN FEDERAL TAX-FREE INCOME FUND    :

:

-and-                                    :

:

OPPENHEIMER ROCHESTER FUND MUNICIPALS    :

:

-and-                                    :

:

OPPENHEIMER MUNICIPAL FUND (on behalf of its  :
series OPPENHEIMER ROCHESTER LIMITED      :
TERM MUNICIPAL FUND)                      :

:

-and-                                    :

:

OPPENHEIMER MULTI-STATE MUNICIPAL        :
TRUST (on behalf of its series OPPENHEIMER  :
ROCHESTER NEW JERSEY MUNICIPAL FUND,     :
OPPENHEIMER ROCHESTER PENNSYLVANIA       :
MUNICIPAL FUND, and OPPENHEIMER          :
ROCHESTER HIGH YIELD MUNICIPAL FUND)     :

:

-and-                                    :

:

OPPENHEIMER ROCHESTER OHIO MUNICIPAL     :
FUND                                     :

-and-                                    :

:

OPPENHEIMER ROCHESTER ARIZONA            :
MUNICIPAL FUND                           :

:

-and-                                    :

:

OPPENHEIMER ROCHESTER VIRGINIA           :
MUNICIPAL FUND                           :

:

-and-                                    :

:

OPPENHEIMER ROCHESTER MARYLAND           :
MUNICIPAL FUND                           :

:

-and-                                    :

:

OPPENHEIMER ROCHESTER LIMITED TERM       :
CALIFORNIA MUNICIPAL FUND                :

:

-and-                                                    :

                                                         :

OPPENHEIMER ROCHESTER CALIFORNIA                        :
MUNICIPAL FUND                                           :

                                                         :

-and-                                                    :

                                                         :

ROCHESTER PORTFOLIO SERIES (on behalf of its            :
series OPPENHEIMER ROCHESTER LIMITED                    :
TERM NEW YORK MUNICIPAL FUND)                           :

                                                         :

-and-                                                    :

                                                         :

OPPENHEIMER ROCHESTER AMT-FREE                          :
MUNICIPAL FUND                                           :

                                                         :

-and-                                                    :

                                                         :

OPPENHEIMER ROCHESTER AMT-FREE NEW                      :
YORK MUNICIPAL FUND                                     :

                                                         :

-and-                                                    :

                                                         :

OPPENHEIMER ROCHESTER MICHIGAN                          :
MUNICIPAL FUND                                           :

                                                         :

-and-                                                    :

                                                         :

OPPENHEIMER ROCHESTER MASSACHUSETTS                    :
MUNICIPAL FUND                                           :

                                                         :

-and-                                                    :

                                                         :

OPPENHEIMER ROCHESTER NORTH CAROLINA                   :
MUNICIPAL FUND                                           :

                                                         :

-and-                                                    :

                                                         :

OPPENHEIMER ROCHESTER MINNESOTA                         :
MUNICIPAL FUND,                                          :

                                                         :

                 Plaintiffs,                            :

                                                         :

                 v.                                     :

                                                         :

THE COMMONWEALTH OF PUERTO RICO                         :

- 3 -

```
                                                    :
                  -and-                             :
                                                    :
THE PUERTO RICO ELECTRIC POWER                      :
AUTHORITY                                           :
                                                    :
                  -and-                             :
                                                    :
ALEJANDRO GARCIA PADILLA,                           :
in his capacity as Governor of the                 :
Commonwealth of Puerto Rico                         :
                                                    :
                  -and-                             :
                                                    :
JOHN DOE,                                           :
in his capacity as agent for the                   :
Government Development Bank for Puerto Rico,        :
                                                    :
                  Defendants.                       :
                                                    :
--------------------------------------------------------------------X
```

## [PROPOSED] SECOND AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

COMES NOW Plaintiffs Franklin California Tax-Free Trust (for the Franklin California Intermediate-Term Tax Free Income Fund), Franklin Tax-Free Trust (for the series Franklin Federal Intermediate-Term Tax-Free Income Fund, Franklin Double Tax-Free Income Fund, Franklin Colorado Tax-Free Income Fund, Franklin Georgia Tax-Free Income Fund, Franklin Pennsylvania Tax-Free Income Fund, Franklin High Yield Tax-Free Income Fund, Franklin Missouri Tax-Free Income Fund, Franklin Oregon Tax-Free Income Fund, Franklin Virginia Tax-Free Income Fund, Franklin Florida Tax-Free Income Fund, Franklin Louisiana Tax-Free Income Fund, Franklin Maryland Tax-Free Income Fund, Franklin North Carolina Tax-Free Income Fund, and Franklin New Jersey Tax-Free Income Fund), Franklin Municipal Securities Trust (for the series Franklin California High Yield Municipal Bond Fund and Franklin

Tennessee Municipal Bond Fund), Franklin California Tax-Free Income Fund, Franklin New York Tax-Free Income Fund and Franklin Federal Tax-Free Income Fund (together, the "Franklin Funds"), together with Oppenheimer Rochester Fund Municipals, Oppenheimer Municipal Fund (on behalf of its series Oppenheimer Rochester Limited Term Municipal Fund), Oppenheimer Multi-State Municipal Trust (on behalf of its series Oppenheimer Rochester New Jersey Municipal Fund, Oppenheimer Rochester Pennsylvania Municipal Fund and Oppenheimer Rochester High Yield Municipal Fund), Oppenheimer Rochester Ohio Municipal Fund, Oppenheimer Rochester Arizona Municipal Fund, Oppenheimer Rochester Virginia Municipal Fund, Oppenheimer Rochester Maryland Municipal Fund, Oppenheimer Rochester Limited Term California Municipal Fund, Oppenheimer Rochester California Municipal Fund, Rochester Portfolio Series (on behalf of its series Oppenheimer Rochester Limited Term New York Municipal Fund), Oppenheimer Rochester AMT-Free Municipal Fund, Oppenheimer Rochester AMT-Free New York Municipal Fund, Oppenheimer Rochester Michigan Municipal Fund, Oppenheimer Rochester Massachusetts Municipal Fund, Oppenheimer Rochester North Carolina Municipal Fund and Oppenheimer Rochester Minnesota Municipal Fund (collectively, the "Oppenheimer Rochester Funds," and together with the Franklin Funds, "Plaintiffs"), by and through their attorneys, and very respectfully state, allege and pray as follows:

## NATURE OF THIS ACTION

1.      This is an action for a declaratory judgment brought pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure for the purpose of determining a substantial and actual controversy between the parties.  As set forth more fully below, Plaintiffs seek a declaration that the Public Corporation Debt Enforcement and Recovery Act, Act No. 71, of June 28, 2014 (the "Recovery Act"), enacted by the Commonwealth of

Puerto Rico (the "Commonwealth"), violates multiple provisions of the United States Constitution (the "Constitution").

2.      Under the Constitution, the Commonwealth has no power to enact a bankruptcy law for the adjustment of the debts of its instrumentalities and public corporations where the Congress of the United States has enacted the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, excluded the Commonwealth's instrumentalities and public corporations from its reach, and explicitly indicated that states have no power to enact their own laws providing for the adjustment of such debts. *See* 11 U.S.C. § 903.   The Recovery Act is therefore unconstitutional in its entirety.   Moreover, specific provisions of the Recovery Act, if enforced, would inflict further constitutional injuries in violation of the Fifth and Fourteenth Amendments and the Contracts Clause, Article 1, Section 10, of the Constitution.

## THE PARTIES, JURISDICTION, AND VENUE

3.      Plaintiffs Franklin Funds are Delaware corporations or trusts with their principal place of business in San Mateo, California.   Collectively, the Franklin Funds hold approximately $692,855,000 of Power Revenue Bonds (the "PREPA Bonds") issued by the Puerto Rico Electric Power Authority ("PREPA") pursuant to the Puerto Rico Electric Power Authority Act, Act No. 83 of May 2, 1941, 22 L.P.R.A. §§ 191, *et seq.* (the "PREPA Act") and the Trust Agreement between PREPA and U.S. Bank National Association as Successor Trustee, dated as January 1, 1974, as amended and supplemented through August 1, 2011 (the "Trust Agreement").   The Trust Agreement is incorporated herein by reference and attached hereto as Exhibit A.   A copy of the Power Revenue Bonds, Series 2013A Official Statement is attached hereto as Exhibit B. The PREPA Bonds are secured by a pledge of all or substantially all of the present and future net revenues of PREPA.

4.      Plaintiffs Oppenheimer Rochester Funds are Delaware statutory trusts with their principal executive offices in Centennial, Colorado.  Collectively, the Oppenheimer Rochester Funds hold approximately $866,165,000 of PREPA Bonds.

5.      Defendant Commonwealth is a United States territory subject to the laws of the United States and the plenary jurisdiction of the United States Congress.

6.      Defendant Governor Alejandro García Padilla (the "Governor") is the Governor of the Commonwealth and is being sued in his official capacity.

7.      Defendant John Doe (the "GDB Agent") is an employee or other agent of the Government Development Bank for Puerto Rico ("GDB") who is empowered to authorize or direct a public corporation to seek relief under the Recovery Act on behalf of the GDB.  On information and belief, GDB is a public corporation organized under the laws of the Commonwealth that serves as a bank, fiscal agent, and financial advisor to the Commonwealth. GDB is headquartered in the Commonwealth.

8.      On information and belief, defendant PREPA is a public corporation organized under the laws of the Commonwealth that provides electrical power to residents and businesses located in the Commonwealth.

9.      This action arises under the Constitution, Article I, Section 8, Article I, Section 10, and the Fifth and Fourteenth Amendments.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367(a).  This Court may render a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57.

10.      Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND

11.     On June 25, 2014, citing a "fiscal emergency" relating to certain of its public corporations, the Commonwealth's Senate (*Senado*) voted to approve the Recovery Act.  The same day, the Commonwealth House of Representatives (*Cámara de Representantes*) similarly voted to approve the Recovery Act.  Three days later, on June 28, 2014, the Governor signed the Recovery Act into law.

12.     The Recovery Act purports to offer to certain public corporations within the Commonwealth the ability, among other things, to invoke protections from creditors and modify debts.   The Recovery Act is expressly modeled on title 11 of the United States Code (the "Bankruptcy Code").

13.     The Recovery Act provides in Sections 202(b) and 301(a) that the GDB (and, in certain instances, the Governor) must authorize and/or direct a public corporation to seek relief under the Recovery Act before such public corporation may invoke the protections afforded under the Recovery Act.

14.     On or about June 26, 2014, the Rating Agency Fitch downgraded the PREPA Bonds from "BB" to "CC," based upon the introduction and the imminent passage of the Recovery Act.

15.     The market prices of PREPA Bonds fell sharply following the introduction and passage of the Recovery Act.  For example, the prices of three series of PREPA Bonds of which Plaintiffs have substantial holdings dropped approximately 35%, 24% and 23%, respectively, between the Recovery Act's June 25 introduction and the resumption of trading following its June 28 passage. These severe declines in the prices of PREPA Bonds have already caused specific and continuing harm to Plaintiffs.  For example, certain of the Plaintiff funds have

already sold PREPA Bonds at reduced prices following the Recovery Act's enactment. In addition, Plaintiffs are required to "mark to market" the holdings of their funds on a daily basis in order to calculate their funds' daily net asset values, *i.e.*, the daily price at which investors purchase or redeem shares from the funds. Consequently, the diminished value of the PREPA Bonds has already reduced the daily net asset values of the Plaintiff funds, causing actual and continuing injury to Plaintiffs, as well as to shareholders of the Plaintiff funds that have sold or will sell fund shares since the Recovery Act's enactment.

16.   On July 9, 2014, Standard & Poor's Ratings Services lowered its rating on PREPA Bonds four notches to 'B-' from 'BB.'

17.   On information and belief, PREPA has already used the threat of the enforcement of the Recovery Act to negotiate certain concessions from creditors. *See* Aaron Kuriloff & Mike Cherney, *Puerto Rico Electric Power Authority Reaches Deal with Lenders*, Wall St. J., July 7, 2014, http://online.wsj.com/articles/puerto-rico-electric-power-authority-reaches-deal-with-lenders-1404756015.

18.   On information and belief, PREPA will file for relief under the Recovery Act imminently. For example, the Recovery Act's Statement of Motives notes that "Public corporations of the Commonwealth of Puerto Rico that provide essential public services, PREPA being the most dramatic example, today face significant operational, fiscal, and financial challenges." *See* Recovery Act, Stmt. of Motives § A. Accordingly, the Statement of Motives to the Recovery Act makes clear that PREPA is to be its inaugural candidate.

19.   Market watchers have likewise predicted that PREPA will seek relief under the Recovery Act in the near future. *See, e.g.*, Aaron Kuriloff, *Puerto Rico's Power Authority Taps Reserves To Pay Investors*, Wall St. J. (July 10, 2014), http://online.wsj.com/articles/puerto-

ricos-power-authority-taps-reserves-to-pay-investors-1405033187 ("The Puerto Rico Electric Power Authority tapped reserve funds to pay investors last week in the latest sign the cash-strapped utility may soon restructure its debt."); Michael Corkery, *Lenders Agree To Give Puerto Rico Electric Power Authority More Time To Repay Debt*, N.Y. Times DealBook (July 7, 2014), http://dealbook.nytimes.com/2014/07/07/lendersagree-to-give-puerto-rico-utility-more-time-to-repay-debt/ ("Prepa is seen as a likely test case for how Puerto Rico can solve its debt problems through a recently enacted restructuring law.").

## THE ACTUAL CONTROVERSY

20.     By enacting the Recovery Act, the Commonwealth and the Governor purport to create legal powers that would violate the Constitution to the detriment of Plaintiffs and other creditors of the Commonwealth's public corporations.  If the Governor or the GDB Agent authorizes a Commonwealth public corporation to seek relief under the Recovery Act, this will perpetuate the constitutional violations described herein.

### A.  The Recovery Act is Preempted by the Bankruptcy Code

21.     Article I, Section 8 of the Constitution provides that "[t]he Congress shall have the power . . . [t]o establish . . . uniform laws on the subject of Bankruptcies throughout the United States . . . ."  (the "Bankruptcy Clause").  *See* U.S. CONST. art. I, § 8, cl. 4.  The Supreme Court ruled almost two hundred years ago that a state may not enact a bankruptcy law where ***either*** it is inconsistent with a bankruptcy law passed by Congress ***or*** it constitutes an impairment of contract forbidden by Article I, Section 10, clause 1 of the Constitution (the "Contracts Clause").  *See Sturges v. Crowninshield*, 17 U.S. 122 (1819).

22.     The Recovery Act's Statement of Motives indicates that "[t]his Act is designed in many respects to mirror certain key provisions of title 11 of the United States Code, and courts

- 10 -

and stakeholders are encouraged to review and consider existing precedent under title 11 of the United States Code . . . when interpreting and applying this Act."  *See* Recovery Act, Stmt. of Motives § E.

23.     The Statement of Motives further states that, in enacting the Recovery Act, the legislature "has adopted a model similar to that of chapter 9 of title 11 of the United States Code" and "clearly expresses its intent that jurisprudence interpreting the provisions of chapter 9 of title 11 of the United States Code be used . . . for purposes of interpreting the provisions . . . of this Act."  *See id*.

24.     Indeed, the Recovery Act purports to confer on eligible debtors numerous powers and benefits that are similar or identical to those provided in the Bankruptcy Code, including, but not limited to:

    i.     the ability to modify debt obligations and force creditors to accept partial satisfaction of their claims in the event threshold levels of creditor support for a restructuring plan can be obtained;

    ii.     the capacity to obtain debtor-in-possession financing by granting priority liens on already encumbered property;

    iii.     an automatic stay of proceedings against the debtor;

    iv.     protection from the operation of contractual *ipso facto* clauses;

    v.     the ability to reject contracts; and

    vi.     a discharge in the form of a permanent prohibition against enforcement of debts that are dealt with under the Recovery Act.

25.     The Recovery Act also provides for the formation of statutory creditors'
committees, court oversight of a plan of reorganization, and other features commonly associated
with the federal bankruptcy regime.

26.     The Recovery Act thus clearly prescribes methods for composition of
indebtedness.  It also provides for judgments rendered under the Recovery Act to bind creditors
who have not consented to such composition.

27.     The United States Congress has enacted the Bankruptcy Code.

28.     Section 903 of the Bankruptcy Code provides as follows:

> This chapter does not limit or impair the power of a State to control, by legislation
> or otherwise, a municipality of or in such State in the exercise of the political or
> governmental powers of such municipality, including expenditures for such
> exercise, but—
> *(1) a State law prescribing a method of composition of indebtedness of such*
> *municipality may not bind any creditor that does not consent to such composition;*
> *and*
> (2) a judgment entered under such a law may not bind a creditor that does not
> consent to such composition.

11 U.S.C. § 903 (emphasis added).  Section 101(52) of the Bankruptcy Code, in turn, defines
Puerto Rico as a "State" for all purposes under the Bankruptcy Code except for determining
eligibility for Chapter 9 under Section 109.

29.     The definition of "municipality" includes an "instrumentality" such as the public
corporations covered by the Recovery Act, 11 U.S.C. § 101(40); the Commonwealth has
conceded as much.  Section 903 is an explicit statement of Congress' intent that the Bankruptcy
Code, and only the Bankruptcy Code, governs the adjustment of debts of a municipality.  As
evidenced by the plain language of Section 903(1), as well as the legislative history of this
section and its predecessor, Section 83(i) of the Bankruptcy Act, the application of Section
903(1) is not limited to Chapter 9 proceedings, but rather applies whether or not a bankruptcy

case (under Chapter 9 or otherwise) is pending. The Recovery Act is thus unconstitutional in its entirety as a bankruptcy law preempted by the Bankruptcy Clause and section 903(1) of the Bankruptcy Code.

30.    Moreover, Sections 115(b)(2) and 115(c)(3) of the Recovery Act permanently enjoin enforcement of any debt that is dealt with by a plan under either Chapter 2 or Chapter 3 of the Recovery Act, including Plaintiffs' Bonds which are secured by a pledge of all or substantially all of the present and future net revenues of PREPA. These sections constitute a "discharge" of both the claims under Plaintiffs' Bonds and an impairment or elimination of the liens securing those claims. It is well-settled that the power to grant a discharge is a unique aspect of the federal bankruptcy power.

31.    The Recovery Act also contains numerous provisions that, standing alone, both differ from the Bankruptcy Code and exceed defendants' powers to enact and enforce legislation and therefore violate the Constitution.

### B.   The Recovery Act Effects an Unconstitutional Taking

32.    The mechanisms set forth in Sections 108(b), 129(d), 202, 312, 315 and 322(c) of the Recovery Act effect an unconstitutional taking of the Plaintiffs' property without just compensation.

33.    *First*, the Recovery Act provides in Section 322(c) that a debtor may obtain credit "secured by a senior or equal lien on the petitioner's property that is subject to a previous lien," without any protection for such previous lien, if, among other things, "the proceeds are needed to perform public functions." Alternatively, a debtor may obtain such financing if it provides "adequate protection" – but section 129(d) of the Recovery Act disposes of the requirement of adequate protection when the "police power" requires. This provision authorizes PREPA to

seize the collateral securing Plaintiffs' PREPA Bonds without compensation for the purpose of securing additional lending for itself.

34.     The Fifth Amendment to the Constitution provides that "private property [shall not] be taken for public use, without just compensation" (the "Takings Clause"). *See* U.S. CONST. amend. V. The Takings Clause applies to the states, and the Commonwealth, by virtue of Section 1 of the Fourteenth Amendment. *See* U.S. CONST. amend. XIV, § 1. The Bankruptcy Code gives effect to the Takings Clause by precluding the grant of a superior lien unless existing liens are "adequately protected." *See* 11 U.S.C. § 364(d)(1).

35.     A grant of a superior lien on property that is already subject to a lien without just compensation (or, in the words of the Bankruptcy Code, "adequate protection") to existing lienholders, as authorized by Section 322(c) of the Recovery Act, constitutes a taking in violation of the Takings Clause. The Recovery Act, in effect, provides Puerto Rico the power to expropriate private property for no compensation (and no adequate protection) when Puerto Rico asserts the need to do so. While Section 129 of the Recovery Act purports to permit the provision of adequate protection, subsection (d) of that section expands and renders optional the concept of adequate protection to the point of meaninglessness.

36.     In addition, section 322(e) of the Recovery Act insulates the grant of secured financing from any effective appeal, providing that the reversal of any authorized financing on appeal "shall not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal."

37.     *Second*, both the PREPA Act and the Trust Agreement provide holders of PREPA Bonds with the right to seek the appointment of a receiver upon a PREPA default. *See* PREPA

Act §§ 17, 18; Trust Agreement §§ 803, 804.  Section 108(b) of the Recovery Act, however, effects a taking of this contractual right as, immediately upon its passage, "any insolvency or custodian provision included in the enabling or other act of any public corporation, including Section 17 of [the PREPA Act]" are "supersed[ed] and annul[led]" by the Recovery Act.

38.     *Third*, the Recovery Act provides in Section 202 that a creditor may be forced to accept a modification of its debt instrument provided that fifty percent of the creditors in a given "class" vote on such a modification, and 75 percent of those who submit ballots vote in favor of such modification.  Thus, the Recovery Act would force Plaintiffs to accept partial payment on their secured PREPA Bonds if other holders of PREPA Bonds vote to accept partial payment.  A state law may not force a municipality's secured bondholders to accept a composition of their indebtedness merely because other holders have voted to do so.

39.     Worse, Sections 312 and 315 of the Recovery Act provide that, upon acceptance by a single creditor class and court approval, a public corporation may enforce a restructuring plan that extinguishes creditors' claims and may provide only partial satisfaction of such creditors' claims.  Thus, the Recovery Act would force Plaintiffs to accept partial payment on the PREPA Bonds even if every single PREPA bondholder voted against a restructuring plan that a small class of unrelated creditors voted to accept.  A state law may not force a municipality's secured bondholders to accept a composition of their indebtedness merely because creditors in other classes (such as unsecured trade creditors or employees) have voted to accept a composition of their own claims.

### C.  **The Recovery Act Violates the Contracts Clause**

40.     The mechanisms set forth in Sections 108, 115, 202, 312, 315 and 325(a) of the Recovery Act deprive Plaintiffs of their contractual rights under the Trust Agreement to payment

in full of their claims, among other things, and thereby impair the Plaintiffs' contractual obligations in violation of the Contracts Clause.

41.     Article 1, Section 10 of the Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."  *See* U.S. CONST. art. I, § 10, cl. 1.

42.     The Trust Agreement creates a contractual relationship between PREPA and the holders of the PREPA Bonds.  In addition, pursuant to the PREPA Act, the Commonwealth pledged to PREPA bondholders that it would not "limit or alter the rights or powers" vested in PREPA "until all such bonds at any time issued, together with the interest thereon, are fully met and discharged." PREPA Act § 25.  Because the PREPA Act existed at the time the Trust Agreement was entered into, the Trust Agreement is deemed to incorporate the terms of the PREPA Act.

43.     Both the Trust Agreement and the PREPA Act confer numerous contractual rights on the holders of the PREPA Bonds that are substantially impaired – or in some cases eliminated – by the Recovery Act.

44.     *First,* the PREPA Act provides holders of PREPA Bonds with, among other things, certain remedies in the event of a PREPA default, including the right to seek the appointment of a receiver to displace management and operate PREPA in accordance with court directives.  PREPA Act §§ 17, 18.  Likewise, the Trust Agreement provides holders of PREPA Bonds with certain remedies in the event of a default, including the ability to (i) accelerate payments, (ii) sue at law or equity to enforce the terms of the Trust Agreement, or (iii) seek the appointment of a receiver in accordance with the PREPA Act.  Trust Agreement §§ 803, 804.  Section 115(b)(2) of the Recovery Act, however, bars entities "asserting claims or other rights, including a beneficial interest, in respect of affected debt instruments of such eligible obligor,

[any] trustee, [any] collateral agent, [any] indenture trustee, [any] fiscal agent, and [any] bank that receives or holds funds from such eligible obligor related to the affected debt instruments" from bringing "any action or proceeding of any kind or character for the enforcement of such claim or remedies in respect of such affected debt instruments, except with the permission of the Court and then only to recover and enforce the rights permitted under the amendments, modifications, waivers, or exchanges, and the approval order."  In addition, section 108(b) of the Recovery Act also eliminates Plaintiffs' right to seek the appointment of a receiver upon a PREPA default.

45.     *Second*, the Trust Agreement requires PREPA to pay all principal, interest and other charges on the PREPA Bonds when due (Trust Agreement, § 701), and prohibits PREPA from extending the maturity date of or reducing the principal or interest due on the PREPA Bonds, or creating liens on PREPA's revenues, absent consent (*id.* § 1102).  But Sections 202 and 315 of the Recovery Act purport to authorize these actions that are otherwise prohibited by the Trust Agreement.

46.     *Third*, the Trust Agreement prohibits PREPA from selling, leasing, or otherwise disposing of any part of the electric power system, or creating a charge or lien on PREPA's revenues equal to or senior to the lien securing the PREPA Bonds. *Id*. § 712.  Sections 307 and 322 of the Recovery Act, however, allow the court to authorize the sale of assets free and clear of liens, and allow PREPA to prime the liens of PREPA bondholders, without requiring adequate protection, substantial impairing these obligations.

47.     *Finally*, Sections 802(f) and (g) of the Trust Agreement also contain an *ipso facto* clause triggering an event of default when, among other things, an order, decree, or proceeding is instituted or entered "for the purpose of effecting a composition between [PREPA] and its

creditors or for the purpose of adjusting the claims or such creditors . . . ."  Trust Agreement §§ 802(f), (g).   This *ipso facto* clause is rendered unenforceable by Section 325(a) of the Recovery Act, which provides that "[n]otwithstanding any contractual provision . . . to the contrary, a contract of a petitioner may not be terminated or modified, and any right or obligation under such contract may not be terminated or modified . . . solely because of a provision in such contract conditioned on" a default due to the corporation's insolvency or the filing of a petition under Section 301 of the Recovery Act.

48.     To the extent the foregoing provisions of the Recovery Act also deprive secured creditors of the benefits of their security interests, they also effectuate a violation of the Takings Clause.

49.     While the Recovery Act is purportedly intended to "restore the credit of the public corporations of the Commonwealth by improving the fiscal condition of the public corporations without affecting the essential functions of such entities," (Recovery Act § 101(e)), the substantial impairment to the Plaintiffs' contractual rights under the Trust Agreement and the PREPA Act are neither reasonable nor necessary to achieve these goals.

50.     Many other alternative methods are available to the Defendants to achieve the Recovery Act's stated goals, including:

    i.     Adjusting PREPA's rate structure (i.e., raising rates) to support the costs of providing electricity to Puerto Rico, as authorized by Section 502 of the Trust Agreement.  Despite this authorization, PREPA has not raised basic electric rates for over 25 years, with the last reported rate increase occurring in 1989.

ii.   Collecting the over $640.83 million currently owed to PREPA by the Commonwealth (not accounting for $420.57 million the Commonwealth claims it is owed from previously accrued contributions in lieu of taxes).

iii.  Reducing the amount of funds currently diverted to subsidies and other municipalities. PREPA, as a public corporation, is exempt from taxation. *See* PREPA Act § 22. The PREPA Act, however, requires it to set aside 11% of its gross revenues each year to pay "contributions in lieu of taxes" ("CILT payments") to municipalities and other subsidies, including hotels, residential consumers, and others. *Id.* These contributions, which are expected to total almost $1 billion from 2014 to 2018, could be reduced without impairing PREPA's contractual obligations to holders of PREPA Bonds.

iv.   Giving priority to payments to PREPA Bonds over subsidy and CILT payments. Historically, the PREPA Act gave payments due on the PREPA Bonds priority over subsidy and CILT payments. *See* PREPA Act § 22. Nevertheless, in practice, PREPA allowed recipients of subsidy and CILT payments to reduce their electric payments by the amount of the subsidy or CILT payment, essentially giving such recipients priority of payment over holders of PREPA Bonds.

v.    Cutting costs and correcting inefficiencies in PREPA's management. Among other things, PREPA has been reported to have (i) a highly overstaffed human resources and labor department compared to peer corporations, (ii) high costs for customer service, especially when compared to its low service levels, (iii) under-competitive bidding procedures for its equipment, (iv) surplus equipment and other inventory above that needed for storm preparedness, (v) high overtime

charges from PREPA employees and lenient timekeeping standards, and (vi) weak accounting controls and decentralized accounting information. Correcting each of these inefficiencies or cutting excess costs could be implemented, improving PREPA's financial stability in both the short and long term.

vi.   Strengthening its reputation in the global capital markets and developing better relationships with customers. Specifically, PREPA could hire a capital markets investment banker, something it has not done since the issuance of its 2013A PREPA Bonds, or present publicly to investors, another action it has not taken in over a year, since May 2013. In the eight months since the issuance of the $8 billion "Advanced Fossil Energy Projects" solicitation in December 2013, PREPA has also not addressed whether it will apply for a federal guarantee through this program, but could, thereby strengthening creditor relationships and stabilizing its finances without prejudicing its contractual rights.

51.   Each of these alternatives represents a less drastic solution for the problem the Recovery Act purports to correct. And in each case, the Defendants could implement that solution without impairing the contractual rights of the Plaintiffs and all holders of PREPA Bonds. But, as recognized by Puerto Rico's Resident Commissioner, Pedro Pierluisi, the Recovery Act is "characterized by haste, a lack of transparency, and no public debate about the suitability of alternative ways to address the problem." Pierluisi Statement on Puerto Rico and Chapter 9 of the U.S. Bankruptcy Code (July 10, 2014), *available at* http://pierluisi.house.gov/media-center/pressreleases/pierluisi-statement-on-puerto-rico-and-chapter-9-of-the-us-bankruptcy. The ease with which the numerous alternative solutions could

be implemented underscores that the Recovery Act is not reasonable or necessary to serve any public purpose.

52.     The Recovery Act expressly excludes certain types of creditors from the impairments it imposes, including holders of wage and benefit claims, claims for the provision of goods or services (except under rejected contracts), claims under collective bargaining agreements, claims owed to another public corporation for goods and services, claims of the United States, claims of the GDB for reimbursement under Section 134 of the Recovery Act or claims owed to another "Commonwealth Entity" for money loaned or financial support within 60 days of the filing.  *See* RecoveryAct § 327 (unaffected debt).  As a result, the Recovery Act essentially prefers the claims of certain creditors over other creditors (including bondholders), and cannot be deemed to have been enacted to protect a broad societal interest.

53.     The Recovery Act also unreasonably purports to retroactively adjust substantive contractual rights in an area – municipal bankruptcy – that Puerto Rico had never before sought to regulate.  And it does so after the Commonwealth expressly committed to the Plaintiffs and other holders of PREPA Bonds that it would not "alter" PREPA's rights and powers until the PREPA Bonds were paid in full.  Similarly undermining the "financial emergency" the Recovery Act purports to address is the fact that the legislation is not temporary, but a permanent legislative enactment.

54.     In sum, the Recovery Act substantially impairs the Plaintiffs' contractual rights under the Trust Agreement and the PREPA Act, under circumstances where it was not necessary or reasonable to do so, as alternative methods can easily and equally address the purpose of the Recovery Act.

### D. The Recovery Act Unconstitutionally Authorizes a Stay of Federal Court Proceedings

55.     The Recovery Act provides in Section 304 that a public corporation's filing for relief triggers an automatic stay of all proceedings against the corporation and any related proceedings against the Commonwealth and any elected official or employee of the corporation.

56.     However, pursuant to *Donovan v. City of Dallas*, 377 U.S. 408 (1964), and its progeny, state courts lack any power under the Constitution to enjoin proceedings in federal court.  Thus, to the extent it is argued the seeking of relief under the Recovery Act creates an automatic stay of any actions or proceedings in any federal court or any authority in a court of the Commonwealth to impose or extend such a stay, such purported powers violate well-settled constitutional limits on the power of state courts.

57.     By the same token, the Commonwealth cannot pass a law that denies litigants access to federal courts.  To the extent any provision of the Recovery Act enjoins, stays, suspends or precludes Plaintiffs from exercising their rights in federal court, including their right to challenge the constitutionality of the Recovery Act itself in federal court, those provisions also violate the Constitution.

## CLAIMS FOR RELIEF

### COUNT I
### (DECLARATORY RELIEF - PREEMPTION)

58.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 57 of this complaint.

59.     The Recovery Act is preempted by Congress' power to "establish uniform laws on the subject of bankruptcy" under the Bankruptcy Clause, and Section 903(1) of the

Bankruptcy Code, which prohibits state laws "prescribing a method of composition of indebtedness" of a municipality.

60.     Accordingly, an actual, substantial, and justiciable case or controversy exists (i) between Plaintiffs and the Commonwealth with respect to the constitutionality of the Recovery Act, (ii) between Plaintiffs and the Governor and the GDB Agent with respect to the constitutionality of the Recovery Act and the Governor's and/or the GDB Agent's authority to authorize any entity to seek protection under the Recovery Act,  and (iii) between Plaintiffs and PREPA with respect to the constitutionality of the Recovery Act and PREPA's authority to seek protection under the Recovery Act.  This Court has the power to adjudicate the rights of the parties with respect to this controversy, and should grant the requested declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57 that the Recovery Act is unconstitutional.

## COUNT II
## (DECLARATORY RELIEF – TAKINGS CLAUSE)

61.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 60 of this complaint.

62.     Sections 129(d) and 322(c) of the Recovery Act effectuate a taking of the lien on revenues granted to the Plaintiffs pursuant to the PREPA Bonds, without just compensation, in violation of the Takings Clause.

63.     Section 108(b) of the Recovery Act also effectuates a taking of the Plaintiffs' right to seek the appointment of a receiver upon PREPA's default pursuant to Section 804 of the Trust Agreement and Section 17 of the PREPA Act, without just compensation, in violation of the Takings Clause.

64.     Accordingly, an actual, substantial, and justiciable case or controversy exists (i) between Plaintiffs and the Commonwealth with respect to the constitutionality of the Recovery Act, (ii) between Plaintiffs and the Governor and the GDB Agent with respect to the constitutionality of the Recovery Act and the Governor's and/or the GDB Agent's authority to authorize any entity to seek protection under the Recovery Act,  and (iii) between Plaintiffs and PREPA with respect to the constitutionality of the Recovery Act and PREPA's authority to seek protection under the Recovery Act.  This Court has the power to adjudicate the rights of the parties with respect to this controversy, and should grant the requested declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57 that the Recovery Act is unconstitutional.

## COUNT III
## (DECLARATORY RELIEF – CONTRACTS CLAUSE)

65.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 64 of this complaint.

66.     Sections 108, 115, 202, 312, 315 and 325(a) of the Recovery Act substantially impairs the contractual obligations imposed by the Trust Agreement and the PREPA Act, and, because reasonable alternatives are available, such substantial impairment is not necessary or reasonable to serve an important government purpose, in violation of the Contracts Clause.

67.     Accordingly, an actual, substantial, and justiciable case or controversy exists (i) between Plaintiffs and the Commonwealth with respect to the constitutionality of the Recovery Act, (ii) between Plaintiffs and the Governor and the GDB Agent with respect to the constitutionality of the Recovery Act and the Governor's and/or the GDB Agent's authority to authorize any entity to seek protection under the Recovery Act, and (iii) between Plaintiffs and PREPA with respect to the constitutionality of the Recovery Act and PREPA's authority to seek

protection under the Recovery Act.  This Court has the power to adjudicate the rights of the parties with respect to this controversy, and should grant the requested declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57 that the Recovery Act is unconstitutional.

## COUNT IV
## (DECLARATORY RELIEF – STAY OF FEDERAL COURT PROCEEDINGS)

68.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 67 of this complaint.

69.     The purported automatic stay triggered by a public corporation's filing for relief under the Recovery Act unconstitutionally seeks to enjoin proceedings in federal court.  In addition, any provision of the Recovery Act that seeks to enjoin, stay, suspend or preclude Plaintiffs from exercising their rights in federal court likewise violates the Constitution.

70.     Accordingly, an actual, substantial, and justiciable case or controversy exists (i) between Plaintiffs and the Commonwealth with respect to the constitutionality of the Recovery Act, (ii) between Plaintiffs and the Governor and the GDB Agent with respect to the constitutionality of the Recovery Act and the Governor's and/or the GDB Agent's authority to authorize any entity to seek protection under the Recovery Act,  and (iii) between Plaintiffs and PREPA with respect to the constitutionality of the Recovery Act and PREPA's authority to seek protection under the Recovery Act.  This Court has the power to adjudicate the rights of the parties with respect to this controversy, and should grant the requested declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57 that the Recovery Act is unconstitutional.

71.     No means exist to obtain the relief requested other than a declaratory judgment by this Court.

**WHEREFORE**, Plaintiffs demand judgment:

i.     On Count I, declaring that the Recovery Act in its entirety, and any prospective enforcement thereof or authorization thereunder, is preempted by section 903(1) of the Bankruptcy Code and violates Article I, Section 8 of the United States Constitution as an improper exercise of bankruptcy legislation by a body other than the Congress of the United States;

ii.    On Count II, declaring that the Recovery Act, and any prospective enforcement thereof or authorization thereunder, violates the Fifth Amendment and the Fourteenth Amendment of the United States Constitution insofar as it permits the taking of Plaintiffs' interests in the collateral securing the PREPA Bonds without just compensation;

iii.   On Count III, declaring that the Recovery Act, and any prospective enforcement thereof or authorization thereunder, violates Article I, Section 10, clause 1 of the United States Constitution insofar as it permits the retroactive impairment of Plaintiffs' rights under the contracts governing the PREPA Bonds;

iv.    On Count IV, declaring that the Recovery Act, and any prospective enforcement thereof or authorization thereunder, violates the Constitution insofar as it authorizes any stay of federal court proceedings;

v.     On each of Counts I through IV, awarding costs, including attorneys' fees; and

vi.    On each of Counts I through IV, granting such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today August [ ], 2014.

s/
MANUEL FERNÁNDEZ-BARED
USDC-PR No. 204,204
E-mail: mfb@tcmrslaw.com

s/
LINETTE FIGUEROA-TORRES
USDC-PR No. 227,104
E-mail: lft@tcmrslaw.com

**TORO, COLÓN, MULLET, RIVERA
& SIFRE, P.S.C.**
P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760

– and –

s/
LAURA R. DOMINGUEZ-LLERANDI
USDC-PR 219,114
30 Reparto Piñero
Guaynabo, PR 00969-5650
Tel.: (787) 528-7583
Fax.: (787) 963-0677
E-mail: ldominguezlaw@gmail.com

– and –

**KRAMER LEVIN NAFTALIS & FRANKEL
LLP**

s/
THOMAS MOERS MAYER
AMY CATON
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000

- 27 -

Email: tmayer@kramerlevin.com
acaton@kramerlevin.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this same day, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

**s/**_____
LINETTE FIGUEROA-TORRES
USDC-PR No. 227,104
E-mail: lft@tcmrslaw.com